**SECOND DIVISION
MILLER, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 19, 2021**

# In the Court of Appeals of Georgia

A21A0037. BRAZIL v. WILLIAMS.

MILLER, Presiding Judge.

The mother in this child custody dispute, Tannis Brazil, appeals from the trial court's order dismissing her petition to modify custody and the denial of her motion for new trial. The mother argues that (1) the trial court erred by finding that Oliver Williams, Jr.'s ("the father") move from Georgia to Michigan was not a substantial change in circumstances warranting an inquiry into whether a change in custody was in the child's best interests; and (2) the trial court erred by not allowing her to present testimony on various issues during the hearing. We discern no abuse of discretion in the trial court's denial of the mother's petition to modify custody, and we also determine that the mother has not shown error in the exclusion of evidence. Accordingly, we affirm.

Viewed in the light most favorable to the trial court's order,[1] the record shows that the mother and father divorced in 2017 and are the parents of a daughter born in 2013, H. N. W. The final divorce decree awarded the parties joint legal custody of H. N. W., with the mother having visitation rights and the father having primary physical custody of H. N. W. and final decision-making authority. In August 2017, six months after the entry of the divorce decree, the mother filed a petition for modification of child custody and child support, seeking primary legal and physical custody of H. N. W. In support of her petition, she claimed that there had been material changes in circumstances affecting H. N. W.'s welfare because (1) the father had moved to Michigan; and (2) while she had been previously unavailable to care for H. N. W. due to a six-month night-time incarceration sentence, she had since completed that sentence.

At the hearing on the mother's petition, the trial court heard testimony from the guardian ad litem ("GAL") and both parents. The GAL testified that the father brought H. N. W. to Georgia once per month, which was a departure from visitation every other weekend with the mother, as provided for in the parenting plan. The GAL was also concerned that, because of the move, H. N. W. had fewer opportunities for

---

[1] *Saravia v. Mendoza*, 303 Ga. App. 758 (695 SE2d 47) (2010).

spontaneous activities with her siblings. She explained, however, that H. N. W. is "very bonded" to both parents, that she would not be in danger with either parent, and that it was "hard to pinpoint" whether either parent was preventing H. N. W. from communicating with the other parent. The GAL added that communication between the parents is inconsistent and that "there [are] a lot of fingers being pointed back and forth." Ultimately, the GAL recommended that custody mainly be placed with the mother because, logistically, it would be easier for the father to visit H. N. W. in Georgia.[2]

The mother testified that she was seeking custody of H. N. W. because H. N. W. is sleepy when she arrives in Georgia, and the mother believed the plane travel to be grueling. She also testified that her time with H. N. W. had been minimized since the father's move. The father testified that he brought H. N. W. to Georgia in February, March, April, May, June, and July of 2019 and that the flight from Michigan to Georgia takes approximately an hour and a half. He explained that he could bring H. N. W. to Georgia every other weekend and that it was not cost-prohibitive to do so as the plane tickets cost $50 round-trip. He added that H. N. W.

---

[2] At the time of the divorce, the GAL recommended that the father be named the custodial parent largely because the mother had made unsubstantiated allegations that he had sexually abused H. N. W.

had continued to see her other family members in Milledgeville, Georgia, because they come to Atlanta to spend time with her.

After the mother presented her evidence, the trial court granted the father's motion for a directed verdict, determining that the father's relocation was not a material change in circumstances. The court reasoned that the parties lived two hours away from each other before the move, and they were now located less than two hours away from each other by plane. The mother filed a motion for a new trial, which the trial court denied after a hearing. This appeal followed.

1. First, the mother argues that, under Supreme Court of Georgia precedent, the trial court erred by ruling that the father's move to Michigan did not constitute a material change in circumstances warranting an inquiry into whether a change in custody was in H. N. W.'s best interests. She argues that, in relocation cases, it is mandatory for the trial court to make findings regarding whether a change in custody is in the child's best interests. This argument finds no support in the law.

In Georgia, there is a well-established two-part test which the trial court must employ before instituting a change of custody. "[T]he trial court must determine whether there has been a material change in circumstances affecting the welfare of the child since the last custody award. If so, the trial court then determines whether

4

the child's best interest will be served by a change in custody." (Citations omitted.) *Odum v. Russell*, 342 Ga. App. 390, 392 (1) (802 SE2d 829) (2017). In other words, "[t]he best interest[s] of the child should be utilized in deciding the case once a change in condition has been established." (Citation omitted.) Id. "While a 'best interest[s] of the child' standard applies to an initial determination of custody, it is applicable in a change of custody action only after there has been a showing of a change in condition materially affecting the child." (Citation omitted.) Id.

(a) The first question before us is whether the Supreme Court of Georgia has adopted a specific rule for relocation cases, i.e., that a parent's relocation necessarily triggers a need for the trial court to issue findings regarding whether a change in custody is in the child's best interests. We find that no such rule has been created.

In *Bodne v. Bodne*, 277 Ga. 445 (588 SE2d 728) (2003), the case on which the mother relies, the Supreme Court of Georgia determined that a trial court may not presume that a custodial parent's decision to move is affirmatively in the best interests of the child. Id. at 446. In doing so, the Court held that "[w]hen exercising its discretion in relocation cases, as in all child custody cases, the trial court must consider the best interests of the child and cannot apply a bright-line test." Id. Crucially, the Court immediately clarified the import of this holding, explaining,

5

"[t]his means that an initial custodial award will not always control *after* any new and material change in circumstances that affects the child is considered." (Punctuation omitted; emphasis supplied.) Id.

It is clear to us that the Supreme Court's adoption of the best-interests standard in *Bodne* merely functioned as a rejection of the presumption that the custodial parent has a prima facie right to retain custody of the child in relocation cases. *Bodne*, supra, 277 Ga. at 447 (overruling all Georgia cases that "presume[d] the custodial parent has a prima facie right to retain custody unless the objecting parent shows that the environment of the proposed relocation endangers a child's physical, mental or emotional well-being[.]"); *Weickert v. Weickert*, 268 Ga. App. 624, 626 (602 SE2d 337) (2004) (explaining that the *Bodne* Court abolished the presumption of continuation of custody in favor of the best-interests standard).[3] The Court in *Bodne* did not alter the standard two-step framework for a trial court's consideration of a change in custody, and we find no language in *Bodne* intimating that a parent's out-of-state relocation automatically and necessarily constitutes a material change in

[3] The mother is correct that, in *Weickert*, the Court found that the custodial parent's relocation "across the country" to California was a material change in circumstances. *Weickert*, supra, 268 Ga. App. at 628 (1). Nevertheless, the Court did not create any categorical rule that a custodial parent's out-of-state relocation automatically constitutes a material change in circumstances.

6

circumstances that warrants the best-interests inquiry. Indeed, in a predecessor case to *Bodne*, the Supreme Court declared that "[w]hile many children experience a degree of trauma or difficulty as the result of . . . the relocation of the family unit, that emotional upset constitutes *only a factor* that can be considered in the totality of the circumstances and balanced in determining whether *a change of condition* occurred." (Punctuation omitted; emphases supplied.) *Scott v. Scott*, 276 Ga. 372, 376 (578 SE2d 876) (2003).

Accordingly, because *Bodne* does not automatically require an inquiry into the child's best interests, the mother's argument that trial court contravened the requirements of *Bodne* is without merit.

(b) Further, the trial court did not commit reversible error in determining that there had been no material change in circumstances affecting H. N. W.'s welfare.

"In making the determination whether there has been a material change in circumstances affecting the child, the trial court is vested with broad discretion which will not be disturbed on appeal unless abused." *Webb v. Webb*, 245 Ga. 650, 652 (3) (266 SE2d 463) (1980). We are exceedingly mindful that

> [t]he task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their

witnesses, observe their demeanor and attitudes, and assess their credibility. We do not second-guess the trial court in this regard when, as here, there is any reasonable evidence to support the decision.

(Citations and punctuation omitted.) *Sadler v. Rigsby*, 343 Ga. App. 269, 272 (1) (c) (808 SE2d 11) (2017). Even "slight" evidence supporting the trial court's ruling will suffice. *In Interest of R. R.*, 222 Ga. App. 301, 305 (3) (474 SE2d 12) (1996) (physical precedent only). As the party seeking the modification of custody, "the mother had the threshold burden of showing a material change in circumstances" affecting H. N. W.'s welfare. *Park-Poaps v. Poaps*, 351 Ga. App. 856, 862 (2) (833 SE2d 554) (2019).

The trial court determined that the father's relocation was not a material change because (1) at the time of the divorce, the parties lived two hours away from each other, which was contemplated by the final decree; and (2) given the father's move to Michigan, the parties were located less than two hours away from each other by plane.[4] These factual findings find some support in the record. The father testified that

---

[4] The trial court also found that poor communication and co-parenting between the parties did not rise to the level of material changes in circumstances because these issues existed at the time of the divorce. Additionally, the trial court changed the parenting plan as it related to visitation, ordered the parties to pay their own attorney fees, and provided for the payment of the GAL's fees. The mother has not challenged

8

the flight from Michigan to Georgia takes approximately an hour and a half and that the travel time to facilitate visitation with the mother is essentially the same as when he lived in Milledgeville. The mother confirmed that when the father lived in Milledgeville, he was located two hours away from her. The father further testified that he can bring H. N. W. to Georgia every other weekend. He testified that H. N. W.'s grades in school had not suffered due to the travel, the travel had not worn on her, and the travel to visit with the mother is less taxing than when he and H. N. W. lived in Milledgeville. He added that H. N. W. maintains her relationships with her other family members in Milledgeville because she communicates with them via video calls and because they come to Atlanta to spend time with her.

Because the trial court's ruling finds some evidentiary support in the record (even if we were to characterize that evidence as slight), we cannot say that the trial court abused its discretion in finding that the father's relocation did not constitute a material change in circumstances. See, e.g., *Moore v. Wiggins*, 230 Ga. 51, 54-55 (1) (195 SE2d 404) (1973) (trial court did not abuse its discretion in determining that the custodial parent's move 400 miles away to Mississippi did not constitute a material change in condition); *Hirsh v. Dobb*, 224 Ga. 130, 134 (3) (b) (160 SE2d 386) (1968)

---

any of these rulings on appeal.

9

(rejecting the father's argument that "the evidence demanded a finding of change of conditions" because the mother moved to Maryland); *Scott v. Scott*, 227 Ga. App. 346, 348-349 (1) (489 SE2d 117) (1997) (trial court did not abuse its discretion in finding that the material changes in circumstances were not sufficient to remove custody from the mother despite the CASA worker's recommendation that custody be changed to the father).

2. Next, the mother argues that the trial court erred in not allowing her to present evidence regarding (1) the father's failure to communicate with her concerning H. N. W.'s broken leg, her schooling, and other events; (2) the father's failure to provide her with notice of his intent to move; and (3) the mother's difficulty with exercising visitation and communicating with H. N. W. The mother argues that this evidence was relevant to the question of H. N. W.'s best interests and should have been considered under OCGA § 19-9-3 (a) (3). This argument is unavailing.

First, while the mother argues that the trial court should have considered this evidence when determining H. N. W.'s best interests (OCGA § 19-9-3 (a) (3)), the trial court properly declined to proceed to the best-interests inquiry after its threshold determination that there had been no material change in circumstances.

Additionally, the record clearly reflects that the court allowed testimony on the issues that the mother raises. The mother cross-examined the father on (1) H. N. W.'s communication with her via phone; (2) whether the father told her that H. N. W. had broken her leg and whether he had tried to conceal the incident; (3) whether the father told her that he had moved to Michigan and represented that he still lived in Georgia even after he left the State; and (4) whether the father believed that H. N. W. could maintain a relationship with her given the relocation. The mother was also allowed to testify on many of these same issues. She testified as to the frequency with which she speaks to H. N. W. via phone, the father's supposed lack of communication with her about H. N. W.'s broken leg, a pattern of not being able to see H. N. W. since the move, and whether she would have greater access to H. N. W. if the father were still in Georgia. She explained that the father had sent her pictures of H. N. W.'s Pre-K graduation but did not "give [her] the opportunity" to attend and had not invited her to H. N. W.'s school events. Additionally, before hearing testimony from the GAL, the trial court ruled that the mother had properly given notice of her intent to present evidence that the father had "worked to exclude [the mother] from the child's life." The GAL was then allowed to testify that H. N. W. and the mother had been spending less time together since the move. Accordingly, the record clearly shows that the trial

11

court did allow the mother to present evidence of the issues she raises in her appellate brief.[5]

Because the trial court did not abuse its discretion in ruling that the father's relocation to Michigan was not a material change in circumstances affecting H. N. W.'s welfare, and the mother has demonstrated no reversible error in the exclusion of evidence, we affirm the denial of the mother's petition to modify custody and the denial of the mother's motion for new trial.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*

---

[5] To the extent that the mother may be arguing that the trial court should have considered whether all of this evidence showed a material change in circumstances, we observe that the mother repeatedly urged the trial court to consider the move — *standing alone* — as the material change. At the hearing on the motion for new trial, she claimed that "the move in and of itself" constituted the material change and that "the other issues that come with the relocation" "would come into play on an evaluation of what's in the child's best interest[s]." During the final hearing, the mother insisted that the very fact that the father relocated "more than 500 miles away" from his previous home satisfied the material-change prong. Accordingly, the mother cannot now complain that the trial court should have assessed whether this additional evidence showed a material change. See *Saravia v. Mendoza*, 303 Ga. App. 758, 762 (1) (695 SE2d 47) (2010) ("[I]t is well established that one cannot complain of a judgment, order, or ruling that [her] own procedure or conduct procured or aided in causing.") (citation omitted).