**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 13, 2024**

# In the Court of Appeals of Georgia

A24A0661. WILSON v. ARNOLD.

WATKINS, Judge.

In this child custody dispute between former spouses, Amanda Maria Wilson, the mother of nine-year-old M. A., appeals from the trial court's order changing the parties' custody and visitation arrangements. As set forth herein, we conclude that the trial court erred by modifying the parties' custody arrangements, including their decision-making authority, in light of its ruling that there was no material change in circumstances. Consequently, we vacate the trial court's rulings as to custody and visitation and remand the case for further proceedings.

On appeal from a trial court's determination in a custody dispute, we defer to that court in all matters of fact[.] When considering a dispute regarding the custody of a child, a trial court has very broad discretion, looking always to the best interest of the child. This Court will not

interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, we will not find there was an abuse of discretion.[1]

So viewed, the record shows that Wilson (the "mother") was married to Christopher Lee Arnold (the "father") when M. A. was born in 2015. Under the parenting plan that was incorporated into the parties' 2019 divorce decree, the parents agreed to share joint legal custody and decision-making authority. The plan provided the parties with approximately equal parenting time but designated the mother as M. A.'s primary physical custodian and, in a separate section, provided that the "[p]rimary physical custodian" would have tiebreaker authority on major decisions that could not be resolved jointly. As to parenting time and visitation, the plan provided that M. A. would live with each parent on an alternating weekly basis, subject to a holiday schedule.

In January 2022, the mother filed a petition for modification of child custody, alleging that due to a material change in circumstances, it was in M. A.'s best interest for the mother to be awarded primary physical custody and the father to be awarded

---

[1] (Citation and punctuation omitted.) *Bankston v. Warbington*, 332 Ga. App. 29 (771 SE2d 726) (2015).

standard visitation. The mother also asked the court to hold the father in contempt for violating various provisions of the parenting plan. The father filed counterclaims, seeking primary physical custody and tie-breaker decision-making authority himself, and raising his own allegations of contempt.

After a bench trial, the trial court concluded that although both parents had "exhibited no co-parenting skills, whatsoever," there was no material change in circumstances such that custody could be modified. As to contempt, the court found both the mother and father to be in contempt on various grounds and ordered them to purge themselves from contempt by completing co-parenting counseling.

Despite its finding that there was no material change in circumstances to warrant a change in custody, the court found that under OCGA § 19-9-3 (b), the best interests of the child necessitated a change in the visitation and parenting time schedule. Specifically, the court found that M. A.'s decline in academic performance demonstrated that medical intervention was likely necessary to address the child's focus and attention issues and, additionally, that the parents had demonstrated an inability to co-parent under the week-to-week rotation and decision-making terms. Consequently, relying on OCGA § 19-9-3 (b), the trial court changed the parties'

schedule from a weekly rotation to a six-month rotation, with the non-custodial parent having visitation on the second and fourth weekends. As to decision-making, the court ordered that the "[f]ather shall have sole decision-making authority relating to the [c]hild's ADHD treatment." Additionally, the court changed tiebreaker decision-making authority to be the parent who had physical custody of the child at the time the decision is being made; that is, the father would have tie-breaker authority from January 1 to June 30 of each year and the mother would have such authority from July 1 to December 31.

1. The mother argues that the trial court's changes to the parties' decision-making authority constituted a change in custody that was not permissible absent a material change in circumstances. We agree.

> In Georgia, there is a well established two-part test [that] the trial court must employ before instituting a change of custody. The trial court must determine whether there has been a material change in circumstances affecting the welfare of the child since the last custody award. If so, the trial court then determines whether the child's best interests will be served by a change in custody.[2]

---

[2] (Citations and punctuation omitted.) *Wiggins v. Rogers*, 367 Ga. App. 315, 317 (1) (885 SE2d 823) (2023).

In *Odum v. Russell*,[3] the parties initially shared decision-making authority over the child's extracurricular activities, while the father had final decision-making authority over the child's education. After they sought modifications of their parenting plan, the trial court found there was no material change in circumstances that would authorize a change in custody. Nonetheless, the court changed final decision-making authority about education from the father to the mother, changed decision making about extracurricular activities from joint to the father, and removed a week of custody from the father.[4] We reversed the trial court's judgment on appeal, concluding that "[b]ecause the trial court expressly found that there had been no material change in circumstances, the trial court was not authorized to modify the original custody order by altering parental custody arrangements, which included arrangements over which parent would have final authority over certain decisions relating to the child."[5]

---

[3] 342 Ga. App. 390 (802 SE2d 829) (2017).

[4] Id. at 391.

[5] Id. at 393 (1).

Here, as in *Odum*, the trial court expressly found there had been no material change in circumstances such that a change in custody was warranted, but nonetheless modified various provisions of the parties' custody arrangements. Specifically, the final divorce decree provided that major decisions about M. A.'s education, health care, extracurricular activities, and religious training would be made jointly.[6] The decree further provided that the child's "primary physical custodian" — designated as the mother in a separate provision of the decree — would have tiebreaker decision-making authority. In the order on appeal, the trial court found there was no material change in circumstances that would authorize a change in custody, but the court nonetheless changed the parties' decision-making authority, granting the father sole decision-making authority as to M. A.'s ADHD treatment and ordering that tiebreaker decision-making authority over other issues would be held by the parent who has physical custody of M. A. at the time the decision is being made. Additionally, the trial court removed the mother's designation as "primary physical custodian." As in *Odum*, because the trial court found there was no material change in circumstances,

[6] See OCGA § 19-9-6 (5).

the court was not authorized to modify the parties' custody arrangements, including their decision-making authority.[7]

The trial court stated, in its order, that its modifications were authorized under OCGA § 19-9-3 (b). That statute provides, in relevant part, as follows.

> In any case in which a judgment awarding the custody of a child has been entered, on the motion of any party or on the motion of the judge, that portion of the judgment *effecting visitation rights* between the parties and their child *or parenting time* may be subject to review and modification or alteration without the necessity of any showing of a change in any material conditions and circumstances of either party or the child, provided that the review and modification or alteration shall not be had more often than once in each two-year period following the date of entry of the judgment.[8]

By its terms, this provision authorizes changes to the parties' visitation rights and parenting time — not to the parties' decision-making authority or other custody rights. As outlined above, the trial court's modifications to the parties' parenting plan were not limited to changes to their visitation rights and parenting time. Thus, the trial court erred by relying on this provision as a basis for all of its changes to the parties'

---

[7] *Odum*, 342 Ga. App. at 393 (1).

[8] (Emphasis supplied.) OCGA § 19-9-3 (b).

7

parenting plan. And although some of the modifications ordered by the court may fall within the scope of permissible changes to the parties' parenting time schedule, those are intertwined with the court's removal of the mother as the designated primary custodian and its changes to the parties' decision-making authority. Accordingly, we must vacate all of the custody and visitation rulings contained within the trial court's order.[9]

2. The mother raises several additional challenges to the trial court's rulings on custody and visitation. Among other arguments, she contends the trial court erred by: finding there was no material change in circumstances given the parties' agreement that there was such a change; failing to recognize the importance of the divorce decree's designation of the mother as the child's primary physical custodian; failing to make a finding that the changes it ordered were in the best interest of the child; failing to ratify the agreement the parties reached in mediation without making written findings as to why the agreement was not in the best interest of the child; ordering a self-executing change in custody without a contemporaneous determination as to whether that change is in the child's best interest; failing to draft specific findings of

---

[9] *Odum*, 342 Ga. App. at 393 (1).

fact and conclusions of law; and faulting the mother for objecting to the child calling the step-mother "mom." Because we have concluded, in Division 1, that the trial court's rulings on custody and visitation must be vacated, these additional arguments are moot.

For the foregoing reasons, we vacate the trial court's rulings as to custody and visitation and remand the case for further proceedings.

*Judgment vacated in part and case remanded. Doyle, P.J., and Hodges, J., concur.*